IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 19-190-12 |
| | ) |
| CURTIS SAXTON-SMITH | ) |

## OPINION and ORDER ON MOTION TO SUPPRESS

This matter is before the Court on Defendant Curtis Saxton-Smith's Motion to Suppress, ECF No. 439, and the government's response thereto, ECF No. 477. Mr. Saxton-Smith seeks to suppress evidence obtained from a traffic stop in which he was a passenger. After careful consideration, and for the reasons that follow, Defendant's motion will be denied.

### I.     Background

On September 26, 2018, Trooper Zachary D. Del Sordo of the Pennsylvania State Police was monitoring traffic along Interstate 76 when he observed a silver GMC Terrain SUV traveling in the left-hand passing lane in violation of 75 Pa. C. S. A. § 3313(d)(1). Pennsylvania State Police Incident Report, Sept. 26, 2018, Ex. A to Gov't Resp., ECF No. 477-1. Section 3313(d)(1) requires that all vehicles on highways such as I-76 must travel in the right-hand lane unless a specified permitted condition applies. Trooper Del Sordo followed the vehicle for approximately 1.5 miles during which the vehicle remained in the left-hand lane and then conducted the stop. ECF No. 477-1. The traffic stop began at approximately 11:24 a.m. and was recorded on both video and audio recording devices. Id. The driver of the vehicle was Duane Cash and the passenger was Mr. Saxton.

Upon contact with the occupants, driver Duane Cash and passenger Mr. Saxton-Smith, Trooper Del Sordo noticed an overwhelming odor of marijuana coming from the vehicle. Id. Trooper Del Sordo also noted that there was only a single key in the ignition with no other

keys attached.  Id.  Based on his training and experience, Trooper Del Sordo knows that drug traffickers commonly use a single key to facilitate use of the vehicle by other members of the organization, whereas the public in general usually attaches house keys.  Id.  After receiving the registration for the vehicle from Mr. Cash, Trooper Del Sordo discovered that the vehicle was a reconstructed vehicle title.[1]  Id.  In Trooper Del Sordo's training and experience, vehicles with reconstructed titles are often used to install after-market hidden compartments.  Id.  The vehicle was also recently registered, indicating to Trooper Del Sordo that the vehicle was possibly being used in rotation with other vehicles as a means for a drug trafficker to avoid detection by police and rival drug traffickers.  Id.  The vehicle was not registered in Mr. Cash's name, and when asked who the owner was, Mr. Cash stammered and stuttered and displayed other signs of nervousness and fear, which Trooper Del Sordo viewed as an effort to convince the Trooper that his answers were truthful.  Id.  Finally, Mr. Cash indicated that he was traveling to Philadelphia, which is a known source for distribution of narcotics.  Id.

Trooper Del Sordo informed Mr. Cash that he was going to search the vehicle based on the odor of marijuana.  Id.  During the course of the search, Trooper Del Sordo, assisted by Trooper Ryan Marmo, discovered a hidden compartment in the vehicle containing $16,200 in United States currency.  Id.  A later ION scan of the currency tested positive for cocaine.   Mr. Cash and Mr. Saxton were transported to the Pennsylvania State Police barracks at Greensburg, and were then released.

---

[1] In Pennsylvania "Reconstructed Vehicle" is defined as a "vehicle, . . ., for which a certificate of salvage was issued and is thereafter restored to operating condition to meet the vehicle equipment and inspection standards."  Pennsylvania Department of Transportation Fact Sheet Reconstructed Vehicle Titling Process https://www.dot.state.pa.us/Public/DVSPubsForms/BMV/BMV%20Fact%20Sheets/Reconstructed_Vehicles.pdf

In November 2019, Mr. Saxton-Smith was arrested on the present federal case. He is charged in a Superseding Indictment, along with twelve other defendants, with one count of conspiracy to distribute 1 kilogram or more of heroin, 280 grams or more of crack cocaine, 100 grams or more of acetyl fentanyl and valeyrl fentanyl, and 400 grams or more of fentanyl, in violation of 21 U.S.C. § 846. The government intends to introduce evidence of the September 26, 2018 traffic stop and of the United States currency in a trial of this case. Gov't Resp. at 3. Mr. Saxton-Smith seeks to suppress the currency as well any identification of Mr. Saxton-Smith as an occupant of the vehicle.

## II.     Discussion

Mr. Saxton-Smith argues that the evidence should be suppressed because Trooper Del Sordo did not have reasonable suspicion or probable cause to conduct the traffic stop. He also argues that the evidence should be suppressed because, even if the stop was lawful, Trooper Del Sordo unlawfully prolonged the stop to search the vehicle without reasonable suspicion of criminal activity. In response, the government argues that, based on the Trooper's observation of a traffic violation, it was a valid traffic stop. Further, the search of the vehicle was lawful, based on a reasonable suspicion of criminal activity. In addition, the government argues that no evidentiary hearing is required because Mr. Saxton-Smith has failed to raise a colorable claim that his constitutional rights were violated. The Court agrees that no hearing is necessary to decide the issue.

### A.  An Evidentiary Hearing is Not Required

Pursuant to Federal Rule of Criminal Procedure 12(c)(1) a District Court "*may* [] schedule a motion hearing" on a motion to suppress. Fed. R. Crim. Proc. 12(c)(1) (emphasis added). While a District Court may exercise its discretion to schedule a motion hearing, a

defendant is *entitled* to an evidentiary hearing only if the suppression motion is "sufficiently specific, non-conjectural, and detailed to enable the court to conclude that (1) the defendant has presented a colorable constitutional claim, and (2) there are disputed issues of material fact that will affect the outcome of the motion to suppress." United States v. Hines, 628 F.3d 101, 105 (3d Cir. 2010) (citing United States v. Voigt, 89 F.3d 1050, 1067 (3d Cir. 1996) (a claim is "colorable" if it consists "of more than mere bald-faced allegations of misconduct")). A defendant's motion to suppress "must identify a constitutional violation at the outset and connect it to the evidence in question; bare assertions . . . without more, will not suffice." Hines, 628 F.3d at 106.  The United States Court of Appeals for the Third Circuit emphasized that "the procedure for a defendant who seeks an evidentiary hearing on a suppression motion is to (1) state a colorable legal claim, (2) identify facts material to that claim, (3) show why the facts are disputed, and then (4) request a hearing to resolve the dispute."  Hines, 628 F.3d at 108.

Mr. Saxton-Smith's Motion fails to state a colorable claim, raise a material fact or dispute the government's version of events.  Mr. Saxton-Smith alleges that the search of the vehicle was unconstitutional because the stop was not supported by reasonable suspicion and that the stop was unlawfully prolonged without reasonable suspicion or probable cause of criminal activity.  Mr. Saxton-Smith's first argument is a bare assertion that the traffic stop was unlawful, with no connecting evidence.  In fact, he does not contest that Mr. Cash was driving in the left-hand lane in violation of the law.  With respect to the extended stop and vehicle search, Mr. Saxton-Smith alleges no facts that, if true, would support a finding that the stop was unlawfully prolonged, and the evidence was obtained in violation of his constitutional rights.  In addition, he does not dispute the version of events set forth in

4

Trooper Del Sordo's report.  Significantly, he does not deny that there was an odor of marijuana emanating from the vehicle.  Notwithstanding the odor of marijuana, Mr. Saxton-Smith does not address Trooper Del Sordo's identification of other indicia of criminal activity.  Accordingly, an evidentiary hearing is not necessary, and the motion will be decided on the pleadings.

### B. Traffic Stop and Search of the Vehicle

Mr. Saxton-Smith asserts that the traffic stop was not supported by reasonable suspicion.  Where "an objective review of the facts shows that an officer possessed specific, articulable facts that an individual was violating a traffic law at the time of the stop" the stop will be deemed reasonable.  United States v. Delfin-Colina, 464 F.3d 392, 397 (3d Cir. 2006).  Here, Trooper Del Sordo observed the vehicle traveling in the left-hand lane in violation of 75 Pa. C. S. A. § 3313(d)(1).  Mr. Saxton-Smith does not allege any fact to call into question the Trooper's observation of a traffic violation.  Therefore, the initial traffic stop was proper.

Next, Mr. Saxton-Smith argues that Trooper Del Sordo lacked reasonable suspicion of criminal activity to search the vehicle.  Trooper Del Sordo states that as soon as he encountered the occupants, he "quickly noticed . . . the overwhelming odor of marijuana emanating from the vehicle." ECF No. 477-1.  The only fact Mr. Saxton-Smith alleges in support of this argument is a speculative claim that law enforcement, in general, may claim they smell marijuana as a false justification for searching a vehicle.  Mr. Saxton-Smith does not allege, as opposed to a bare implicit assertion, that Trooper Del Sordo did not actually smell marijuana.  Also, he does not deny that he and/or Mr. Cash were smoking marijuana.  Thus, there is no material fact at issue as to whether the Trooper smelled marijuana.  The smell of marijuana alone provided probable cause to justify the search of the vehicle.  United

States v. Ramos, 443 F.3d 304, 308 (3d Cir. 2006) ("It is well settled that the smell of marijuana alone, if articulable and particularized, may establish not merely reasonable suspicion, but probable cause").  Accordingly, the search of the vehicle was proper.[2]

## ORDER

AND NOW, this 19th day of August 2020, it is hereby ORDERED that Defendant's Motion to Suppress, ECF No. 439, is DENIED.

BY THE COURT:

Marilyn J. Horan
United States District Judge

---

[2]  Mr. Saxton-Smith also asserts that an officer's reasonable belief that a vehicle contains a hidden compartment is insufficient to support a reasonable suspicion that contraband will be found in the compartment.  Even if that conclusory assertion were true Trooper Del Sordo did not base his search solely on the belief that the vehicle contained a hidden compartment.  Instead, he articulated several observations that, under all the circumstances, indicated that criminal activity may be occurring.  These indications of criminal activity, which support reasonable suspicion to search the vehicle, are not addressed by Mr. Saxton-Smith.